# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HAROLD CAMPBELL, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-13-384-FHS-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Harold Campbell, Jr., requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born November 12, 1955, and was fifty-five years old at the time of the administrative hearing (Tr. 27, 115). He completed high school and has worked as a crusher setter, front-end loader, material handler, dump truck driver, and construction laborer (Tr. 18, 148). The claimant alleges that he has been unable to work since May 1, 2009, due to prostate problems and high blood pressure (Tr. 147).

## Procedural History

On July 6, 2010, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His application was denied. ALJ Osly F. Deramus held an administrative hearing and determined the claimant was not disabled in a written opinion dated February 17, 2012 (Tr. 12-19). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the ability to perform light work as defined in 20 C.F.R. § 416.967(b), *i. e.*, he could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday (Tr. 15-16). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work

3

in the national and regional economy that he could perform, *i. e.*, utility tractor operator (Tr. 19).

**Review**

The claimant's sole contention of error is that the ALJ erred by improperly determining he possessed transferable skills applicable to alternative light work. Because the undersigned Magistrate Judge agrees that the ALJ failed to resolve a conflict between the vocational expert's (VE) testimony and the Dictionary of Occupational Titles (DOT) as to the claimant's transferable skills, the decision of the Commissioner should be reversed.

At the administrative hearing, the claimant testified as to his education, work experience, and physical impairments (Tr. 27-45). The ALJ asked the claimant about his past work, and the claimant stated that he drove a dump truck, ran a Bobcat machine, and ran a rock chopper (Tr. 30-31). In response to further questioning by the VE, the claimant stated that he used the Bobcat to lift and stack rocks in the yard, or used the chopper to lift rocks and chop them with the machine (Tr. 31-32). Later in the hearing, the ALJ asked the VE to characterize the claimant's past work, and also asked the VE if his opinion conflicted with the DOT (Tr. 45-49). The VE described the claimant's past work as a crusher/setter, medium physical demand, SVP 3, semi-skilled; front-end loader operator, medium physical demand, SVP 3; material handler, heavy physical demand, SVP 3, semi-skilled; dump truck driver, medium physical demand, SVP 2, unskilled; and construction laborer, very heavy physical demand, SVP 2, unskilled (Tr. 46). The ALJ then posed a number of hypothetical questions requiring the VE to assume various

limitations and identify the work someone such as the claimant (a fifty-five-year-old with a high school education and above-listed past relevant work) could perform (Tr. 47). First, the ALJ posited a person who could do no more than light work. The VE opined that such a person could not perform his past relevant work. The ALJ asked the VE to identify any transferable skills the claimant had, since some of his past work was "semi-skilled," and the VE indicated that skills from the front end loader position were: operation of a moving vehicle, moving loads, safe operation of vehicles, hand and foot controls (Tr. 47). He indicated that with such transferable skills, the claimant could perform the job of "utility tractor operator [DOT 850.683-046], light physical demand, SVP 3, semi-skilled" (Tr. 48). He then identified the light job of housekeeper, light physical demand, SVP 2, unskilled, DOT 323.687-014 as a job that did not require transferable skills (Tr. 48). The VE also testified that there would be no transferable skills to sedentary work (Tr. 49). In response to questioning from the claimant's representative, the VE testified that he used the front-end loader job to transfer to the utility tractor operator, based on the skills of safe operation of machinery, and knowledge of safety hazards of working with a load on the back of equipment or front of equipment (Tr. 50).

In his written decision, the ALJ found the claimant could perform the full range of light work, with no additional postural or manipulative limitations (Tr. 15-16). He found that the claimant could not return to his past relevant work, because those jobs exceeded the claimant's RFC (Tr. 18). He found that the claimant had acquired work skills from past relevant work, specifically the front-end-loader position that was semi-skilled with

5

an SVP of 3, which required the skills of operation of moving vehicles, moving loads, the safe operation of vehicles, and adequate foot and hand controls (Tr. 18). The ALJ then cited the VE's testimony that the claimant could perform the representative occupation of "utility tractor operator (DOT# 850683046), semi-skilled (SVP 3)" and stated that he had determined that the VE's testimony was consistent with the DOT (Tr. 19). He did not find that the claimant could perform the unskilled job listed by the VE, housekeeper, nor did he explain the omission. He then determined that the claimant was not disabled based on Medical-Vocational Rules 202.15 and 202.07 (where claimant is of advanced age or closely approaching advanced age, with a high school education that does not provide for direct entry into skilled work but claimant has transferable skills to skilled or semiskilled work, the claimant is not disabled) (Tr. 19).

On the date of his application, July 6, 2010, the claimant was 54 years old, but he turned 55 on November 12, 2010, making him a person of advanced age. This is significant because the ALJ must apply certain rules for a person of advanced age who can perform only light or sedentary work. In such a situation, the ALJ must determine "if you have skills that are transferable to skilled or semiskilled light work":

> (d) Skills that can be used in other work (transferability) –
>     (1) What we mean by transferable skills. We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.
>     (2) How we determine skills that can be transferred to other jobs. Transferability is most probable and meaningful among jobs in which –
>         **(i) the same or a lesser degree of skill is require**d;
>         (ii) the same or similar tools and machines are used; and

6

>             (iii) the same or similar raw materials, products, processes, or
> services are involved.
>             (3) Degrees of transferability. There are degrees of transferability of
> skills ranging from very close similarities to remote and incidental
> similarities among jobs. A complete similarity of all three factors is not
> necessary for transferability.

20 C.F.R. §§ 404.1568, 416.968 [emphasis added]. The claimant argues that the VE's testimony, despite his statement to the contrary at the hearing, was in conflict with the DOT because the utility tractor operator job identified by the VE has an SVP of 4—not an SVP of 3 as indicated by the VE's testimony. As noted in the description for utility tractor operator, an SVP of 4 requires over three months up to and including six months of vocational training. *See* DICOT § 850.683-046. The VE did not provide the DOT number for the claimant's former "front end loader" position, but a search of the DOT provides the result of "Front-End Loader Operator," DICOT § 921.683-042, medium work, with an SVP of 3, which is defined as "Over 1 month up to and including 3 months." DICOT § 921.683.042.

Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. Although the VE testified that there was no conflict between his testimony and the DOT, there *is* a conflict that the ALJ was required to

7

resolve as to the claimant's transferable skills, particularly with regard to the time required for vocational adjustment and the level of vocational preparation required. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability."). The ALJ asked the VE to reconcile any conflicts between his testimony and the DOT, but the VE actually mistakenly testified that the SVP for the utility tractor operator position was a 3, when in actuality it has an SVP of 4. DICOT § 850.683-046. This conflict was not resolved at the hearing, and the ALJ recited and adopted the VE's statements in his written opinion. *See* Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *4. The ALJ thus committed reversible error in violation of this court's holding in *Haddock*. *See Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009) (noting that SSR 00-4p "requires that an ALJ must inquire about and resolve any conflicts between a [VE's] testimony regarding a job and the description of that job in the [DOT]"). *See also Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005) (applying *Haddock* to nonexertional limitations); *Krueger v. Astrue*, 337 Fed. Appx. 758, 760-762 (10th Cir. 2009) (reversing and remanding in part because the ALJ failed to resolve a conflict between the VE's testimony and the DOT job descriptions).

The Commissioner attempts to salvage the ALJ's findings by arguing that semi-skilled work corresponds to both an SVP of 3 *and* 4, and the ALJ was therefore entitled to make a determination of transferability of one semi-skilled job to another semi-skilled job. The Commissioner further asserts that it was logical for the ALJ to rely on the VE's

testimony, and emphasizes that "complete similarity" of all factors is not required. *See* 20 C.F.R. § 416.968(d); Soc. Sec. Rul. 82-41, 1982 WL 31389, at *5 (1982). These arguments fail. The ALJ did not make the requisite inquiry and findings to determine that the utility tractor operator position required the same or lesser degree of skill, *see* 20 C.F.R. § 416.968(d)(2)(ii), nor did he make a finding that the differences were allowable under the clarification that "complete similarity of all three factors is not necessary." *Id. See also* Soc. Sec. R. 82-41, 1982 WL 31389, at *5 ("Where transferability is at issue, it is most probable and meaningful among jobs in which: (1) the same or a lesser degree of skill is required, because people are not expected to do more complex jobs than they have actually performed . . . ; (2) the same or similar tools and machines are used; and (3) the same or similar raw materials, products, processes or services are involved. A complete similarity of all these factors is not necessary."). The undersigned Magistrate Judge will not adopt the Commissioner's post-hoc rationalizations. *See Haga v. Astrue*, 482 F.3d 1205, 1207-1208 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted]. *See also Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 2003) ("[T]he ALJ himself must make the required findings on the record[.]").

Unlike the practice in the Fifth Circuit, in *this circuit* the ALJ must resolve any apparent conflict between the VE's testimony and the DOT. *See Burns v. Barnhart*, 312 F.3d 113, 126 n.8 (3rd Cir. 2002) (discussing Circuit split); *compare Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) ("To the extent that there is any implied or indirect conflict between the [VE's] testimony and the DOT in this case . . . the ALJ may rely upon the

[VE's] testimony provided that the record reflects an adequate basis for doing so.") *and Jones v. Apfel*, 190 F.3d 1224, 1229-1230 (11th Cir. 1999) ("We agree with the Sixth Circuit that when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT."), *with Smith v. Shalala*, 46 F.3d 45, 47 (8th Cir. 1995) ("[W]hen expert testimony conflicts with the DOT, the DOT controls.") *and Haddock*, 196 F.3d at 1091 ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

Accordingly, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further proceedings. On remand, the ALJ should resolve any conflicts between the VE's testimony and the DOT and determine what impact, if any, such resolution has on the issue of the claimant's disability.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**